```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------

ULTRA DAIRY LLC

                    Plaintiff,
       -v-                                    5:19-CV-1353

GEORGE KONDRAT; ANDREAS PFEIFFER;
JOHN DOES 1-5; and XYZ CORPORATIONS
1-5,

                    Defendants.

--------------------------------------
```

| APPEARANCES: | OF COUNSEL: |
|---|---|
| VENABLE LLP-NEW YORK OFFICE<br>Attorneys for Plaintiff<br>Rockefeller Center<br>1270 Avenue of the Americas<br>New York, New York 10020 | JESSIE F. BEEBER, ESQ.<br>PATRICK J. BOYLE, ESQ.<br>MICHAEL ANTHONY GUERRA, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

**I.    INTRODUCTION AND BACKGROUND**

Plaintiff Ultra Dairy LLC ("Ultra Dairy" or "plaintiff") is a New York corporation in the business of processing ultra-pasteurized dairy products. Apparently business was good, because in December of 2018, plaintiff began a $40 million construction project at one of its facilities. Plaintiff tabbed the Hayner Hoyt Corporation ("Hayner Hoyt") to mastermind its expansion.

For the first several months, the project went smoothly. Hayner Hoyt would periodically send Ultra Diary an invoice, and plaintiff would pay the invoice by check. But on July 18, 2019, plaintiff alleges that the project fell off the rails. On that day, and again on July

23 and 25, plaintiff claims it received emails, apparently from a ranking Hayner Hoyt accounting specialist, requesting that future payments to the construction company be made by wire transfer instead of by check.  To hear plaintiff tell it, the emails appeared to be legitimate.  They included a letter apparently signed by Hayner Hoyt's president and a voided check with all necessary routing information to transfer the invoiced amounts to a bank account (the "bank account").

But as evidenced by Ultra Dairy's filing a federal lawsuit, it alleges those emails were not legitimate.  Instead, it claims that the account to which plaintiff was directed to send future construction payments did not belong to Hayner Hoyt, but was in actuality controlled by a law firm:  the Perry Law Group ("PLG").

PLG operated that bank account as paymaster for both remaining defendants in this case:  George Kondrat ("Kondrat"), a Canadian citizen, and Andreas Pfeiffer ("Pfeiffer", together with Kondrat "defendants"), a German citizen.  As paymaster, PLG was responsible for keeping any funds transferred into the bank account in its attorney trust account. Defendants nevertheless retained the power to direct PLG to disburse those funds at their discretion.

On August 14 and 15, 2019, Hayner Hoyt sent Ultra Dairy two construction invoices totaling $1,858,250.21.  Plaintiff does not dispute the legitimacy of those invoices.  On September 12, 2019, plaintiff claims that it transferred into the bank account the full $1,858,250.21 the invoices called due.

By September 23, 2019, Ultra Diary's funds had been removed from the bank account in their entirety.  Plaintiff alleges that Kondrat received $810,542.60, Pfeiffer received $910,542.61, and PLG retained $37,165.00 as its paymaster fee.  The remaining $100,000

was split evenly between Ricardo McDonald[1] and former defendant Jennifer Pritchett ("Pritchett"),[2] whom plaintiff alleges to be a longtime business associate of Kondrat's.

Obviously, none of the recipients of Ultra Dairy's misguided money transfer worked for Hayner Hoyt, and none of the money ended up in its hands.  Understandably curious as to when it would receive payment for its invoices, Hayner Hoyt contacted plaintiff on October 3, 2019.  When Hayner Hoyt denied ever receiving the $1,858,250.21, or ever asking plaintiff to transfer the funds instead of paying by check, plaintiff alleges that it realized that defendants defrauded it.

On November 1, 2019, Ultra Dairy filed a complaint in the Northern District of New York, against a series of unnamed individual and corporate defendants.  Plaintiff claimed diversity jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeded $75,000 and no known defendant was domiciled in the same state as plaintiff.  On August 3, 2020, plaintiff filed an amended complaint naming Kondrat and Pfeiffer as defendants.

The amended complaint, the current operative pleading, alleges seven counts under New York common law against both Kondrat and Pfeiffer:  (I) fraud; (II) fraudulent inducement; (III) fraudulent misrepresentation; (IV) civil conspiracy to commit fraud; (V) aiding and abetting fraud; (VI) conversion; and (VII) unjust enrichment.  On October 16, 2020, Ultra Dairy moved for default judgment under Federal Rule of Civil Procedure ("Rule") 55 against Kondrat.  On December 30, 2020, plaintiff moved for default judgment against Pfeiffer under the same Rule.  Those motions, having been fully briefed, will now be decided on the basis of the parties' submissions without oral argument.

---

[1] Apparently, McDonald repaid plaintiff's $50,000 and plaintiff makes no further issue of his involvement in defendants' alleged scheme.
[2] On January 13, 2021, the Court approved plaintiff's voluntary dismissal of its claims against Pritchett.  Dkt. 57.

## II. LEGAL STANDARD

Under Rule 55, a district court may grant default judgment against a party for the failure to plead or otherwise defend an action. FED. R. CIV. P. 55; *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). A party moving for default judgment must first attain an Entry of Default from the Clerk of the Court. FED. R. CIV. P. 55(a). Once default is established, the Court must "accept all . . . factual allegations as true and draw all reasonable inferences in" the moving party's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, a district court still must determine whether the allegations and evidence establish the defendant's liability as a matter of law before default judgment can attach. *Id.*

## III. DISCUSSION

Ultra Dairy has adequately served both Kondrat and Pfeiffer with service of process. Despite that service, neither defendant has ever responded to plaintiff's complaint or amended complaint. Plaintiff has also moved for and been granted an entry of default against both defendants. Plaintiff has thus met every requirement of default judgment under Rule 55. FED. R. CIV. P. 55; *see Enron*, 10 F.3d at 95. Accordingly, plaintiff is entitled to default judgment against both Kondrat and Pfeiffer so long as its complaint and the evidence offered establish defendants' liability as a matter of law. *Finkel*, 577 F.3d at 84.

### A. Fraud.

The elements of common law fraud in New York are: "(1) a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009).

4

Ultra Dairy alleges that Kondrat and Pfeiffer were "jointly and severally" responsible for sending it the July 18, 23, and 25 emails.  Plaintiff alleges those emails falsely claimed that Hayner Hoyt wanted future payments to come by wire transfer.  Similarly, plaintiff alleges that the emails falsely identified Hayner Hoyt as the owner of the bank account.  Considering that plaintiff has also alleged that both defendants had control over that bank account and received the lion's share of the money when it was disbursed, that allegation makes both defendants culpable for a misrepresentation known to be false.  And because that false representation misled plaintiff as to whom it was paying a substantial sum of money, those representations were of course material.  Accordingly, plaintiff has established the first element of common law fraud—a material misrepresentation—against both defendants.

The second element, Kondrat's and Pfeiffer's purpose of inducing Ultra Dairy's reliance, is similarly met.  Defendants constructed an elaborate ruse to convince plaintiff that their emails originated from Hayner Hoyt.  That ruse included fabricating a signature from Hayner Hoyt's president and submitting a voided check, apparently from the construction company.  The effort defendants apparently expended in convincing plaintiff that the emails were genuine removes any doubt that they intended plaintiff to rely on those emails.

That same effort Kondrat and Pfeiffer spent giving the emails an air of legitimacy also makes Ultra Dairy's reliance on their veracity reasonable.  As a result, the third element of reasonable reliance falls into place.  Finally, plaintiff has alleged that it lost $1,858,250.21 to defendants' alleged scheme, and the fourth element of injury is amply met as well.  Having established all four elements of common law fraud as a matter of law, plaintiff is entitled to default judgment on Count I against both defendants.

### B. Aiding and Abetting Fraud.

Under New York law, a plaintiff hoping to establish a defendant's aiding and abetting a fraud must prove: (1) the existence of a primary violation; (2) actual knowledge of the violation by the aider and abettor; and (3) substantial assistance. *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009).

As discussed above, Ultra Dairy has established fraud against Kondrat and Pfeiffer and the first element of aiding and abetting is met. Plaintiff has also alleged that defendants hatched a plan together to enact that fraud, and of course defendants could not have planned a fraud without knowing about it. Plaintiff's allegations that both defendants employed PLG as the paymaster of the account into which the fraudulent funds were transferred lends further credence to defendants' knowledge. For the purposes of default judgment, plaintiff's showing is sufficient to establish the second element. Finally, plaintiff has alleged that both defendants were responsible for sending the fraudulent email and distributing the take from the fraud scheme. Either action constitutes assisting in the fraud, and the third element of aiding and abetting is therefore also satisfied. Plaintiff is entitled to default judgment on Count V.

### C. Conversion.

New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (N.Y. 1995)). To prove that claim out, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the [property], to the alteration of its

6

condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted).

However, conversion cannot enforce a simple obligation to pay money, *see Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases), unless the money is in the form of a "specific, identifiable fund" subject to "an obligation to return or otherwise treat in a particular manner[,]" *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (Sup. Ct. App. Div. 1st Dep't 1990). Additionally, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (footnote omitted).

There can be no doubt that Ultra Dairy has successfully established that Kondrat and Pfeiffer exercised unauthorized dominion over its invoice payments by paying the money to themselves. In doing so, defendants excluded plaintiff from using that money for its intended purpose of paying Hayner Hoyt. That plaintiff owned the money it paid to satisfy those invoices is similarly patent. By extension, plaintiff has met the second and third elements of conversion with ease. The difficulty for plaintiff stems from the first element. Was plaintiff's invoice payment a discrete identifiable fund, or was it simply money? If the former, plaintiff is entitled to default judgment on Count VI as well. If the latter, plaintiff's claim cannot survive.

Ultimately, the scales tip in Ultra Dairy's favor because of two considerations. First, all inferences should be drawn in plaintiff's favor in considering default judgment. *Finkel*, 577 F.3d at 84. Through that pro-plaintiff lens, the uncertain question of whether plaintiff's invoice payment forms a specific fund should be answered affirmatively, to plaintiff's benefit. Second, and even setting aside the Court's obligation to draw inferences in plaintiff's favor,

Kondrat and Pfeiffer's unique management of the invoice payment allows for a conversion claim.

Some explanation on that point may clear the matter up. It would be one thing if Kondrat and Pfeiffer conned Ultra Dairy into transferring the money into their personal accounts. No amount of favorable inferences would be able to save plaintiff's conversion claim in that case. However, rather than draw a straight line between themselves and plaintiff's accounts, defendants interposed PLG and employed it as their paymaster. Under that arrangement, the invoice payment was held together as a discrete fund that PLG was charged to safeguard.

In other words, Ultra Dairy paid a single amount to cover its obligations under the two invoices it received, and that amount went unmolested into an identifiable fund that Kondrat and Pfeiffer charged PLG to keep intact. The invoice payment thus maintained a coherent identity until defendants distributed it to themselves. As a consequence, and only for the purposes of default judgment, defendants converted an identifiable fund, and plaintiff is entitled to default judgment on Count VI.

### D. **Counts II, III, IV, and VII.**

Four counts of Ultra Dairy's complaint remain unaddressed: (II) fraudulent inducement; (III) fraudulent misrepresentation; (IV) civil conspiracy to commit fraud; and (VII) unjust enrichment. As discussed below, none of these claims can survive.

As for Ultra Dairy's varied alleged species of fraud for Counts II and III, the elements of fraudulent inducement and fraudulent misrepresentation are functionally identical to the elements of fraud proper. *See, e.g. Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006) (listing elements of fraudulent inducement as: (1) material false representation collateral to a contract; (2) known by defendant to be false; (3) reasonable reliance by plaintiff

8

inducing its entry into the contract; and (4) injury); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (listing elements of fraudulent misrepresentation as: (1) misrepresentation or material omission of fact known by defendant to be false; (2) made for purpose of inducing plaintiff's reliance; (3) justifiable reliance by plaintiff; and (4) injury).

Because the elements of plaintiff's Counts I, II, and III are essentially identical and Ultra Dairy has already established its ability to recover on Count I, Counts II and III must be dismissed as duplicative. *Cf. Honig v. Cardis Enters. Int'l N.V.*, 2016 WL 6304695, at *11 (E.D.N.Y. Oct. 27, 2016) (dismissing fraudulent inducement claim *sua sponte* on default judgment where plaintiff already established right to recover on fraud).

Similarly, Ultra Dairy's civil conspiracy claims run aground of its aiding and abetting claims. Both aiding and abetting claims and civil conspiracy claims target defendants who do not directly act against the plaintiff, but still cause it harm by helping or participating in planning the underlying tort. *See Burns Jackson Miller Summit & Spitzer v. Lindner*, 452 N.Y.S.2d 80, 83-94 (2d Dep't 1982) ("All that an allegation of conspiracy can accomplish is to connect nonactors, who otherwise might escape liability, with the acts of their co-conspirators.").

Given the unity of purpose between the two torts, most courts applying New York law and faced with concurrent civil conspiracy and aiding and abetting claims have allowed the aiding and abetting claim to proceed while dismissing the civil conspiracy claim. *See, e.g.*, *In re Platinum-Beechwood Litig.*, 2020 WL 30335, at *5 (S.D.N.Y. Jan. 2, 2020) (dismissing conspiracy claim because aiding and abetting claim survived). This Court sees no reason to depart from that logic. Plaintiff's entitlement to relief under Count V renders its Count IV civil conspiracy claim duplicative, and that claim must also be dismissed.

Finally, the Court turns to Ultra Dairy's Count VII unjust enrichment claims. Proving an unjust enrichment claim under New York law requires a plaintiff to prove: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citations and quotation marks omitted). "In New York, a plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019).

Ultra Dairy essentially argues that Kondrat and Pfeiffer were unjustly enriched by taking the invoice payment under false pretenses. If that claim sounds familiar, that is because it is not different in any meaningful way from plaintiff's fraud claim. Plaintiff cannot recover for both fraud and unjust enrichment for the same harm, and by extension its entitlement to relief on its Count I fraud claim precludes its recovery on its Count VII unjust enrichment claim. That claim must also be dismissed.

Needless to say, no amount of repleading can fix claims that are defective because plaintiff is already entitled to relief through an alternative remedy. As a result, Counts II, III, IV, and VII must be dismissed with prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that dismissal of plaintiff's claim with prejudice without first giving opportunity to amend is appropriate where amendment would be futile).

### E. Prejudgment Interest.

Having established its entitlement to relief, Ultra Dairy has also requested prejudgment interest. Under New York law, courts typically apply statutory interest at a rate of nine percent per year. *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing N.Y. C.P.L.R. § 5004). That interest is calculated from the "earliest ascertainable date the

10

cause of action existed[.]" N.Y. C.P.L.R. § 5001(b). As plaintiff correctly notes, its cause of action existed on September 12, 2019, the day it transferred the $1,858,250.21 payment to the bank account due to defendants' fraud. At a yearly rate of nine percent interest on the $1,858,250.21 principal, the total interest from September 12, 2019 to today, a period of 498 days, is $228,182.94  Together with plaintiff's underlying damages, it is entitled to $2,086,433.15.

### F. **Costs.**

Regarding costs, a plaintiff may recover identifiable, out-of-pocket disbursements relating to filing fees, process servers, postage, and photocopying. *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, 2019 WL 312149, at *12 (E.D.N.Y. Jan. 3, 2019). *See id.* Ultra Dairy requests costs in the amount of $974.70 against Kondrat and $3,057.94 against Pfeiffer.

Ultra Dairy's cost requests as to Kondrat are reasonable and in line with recoverable costs in the Second Circuit. Plaintiff requests $400 for the case filing fee, $375.70 for serving Kondrat in Canada, and $199.00 for serving former defendant Pritchett in Florida. Recovery of each of those costs is permissible, and plaintiff may attempt to recover them from Kondrat.

As for Pfeiffer, Ultra Dairy's substantially higher fee request against him may raise eyebrows, but upon close inspection that request is similarly proper. Once again, the $400 filing fee takes up a sizeable portion of the cost request. Additionally, plaintiff included with its default judgment request a receipt for $595.00 to serve Pfeiffer in Germany, and a receipt for $2,062.94 to translate its service materials from English into German. Those costs were also necessary, and of a sort recoverable in a costs request.

Finding Ultra Dairy's cost requests against both defendants to be appropriate, one last issue remains for resolution. Plaintiff has requested to recover the $400 filing fee against

11

both defendants. As a result, the Court is left to determine how best to prevent plaintiff from obtaining a double recovery for that unitary cost.

In determining how to assess attorney's fees and costs, courts in the Second Circuit have discretion to determine whether to apportion liability to each opposing party or to simply impose joint and several liability on all opposing parties. *See Rai v. WB Imico Lexington Fee, LLC*, 2017 WL 1215004, at *8 (S.D.N.Y. Mar. 31, 2017) (noting discretion of district courts to impose joint and several liability for costs and fees). Because Ultra Dairy needed to pay the filing fee and serve all defendants in any case, the Court finds that joint and several liability is appropriate here. *See, e.g.*, *id.* at *8, 14-15 (holding opposing party jointly and severally liable for costs because prevailing party would have incurred same costs regardless of any one opposing party's acts). Plaintiff may only recover its filing fee once, but in all other respects it may recover its full cost request from either or both defendants. Aggregating those requested costs comes to a total of $3,632.64. When costs are added to plaintiff's damages and prejudgment interests, defendants are ultimately jointly and severally liable to plaintiff for $2,090,065.79.

## IV.   **CONCLUSION**

Ultra Dairy has adequately alleged a high-effort and polished fraud scheme by Kondrat and Pfeiffer. Because defendants never bothered to answer that complaint, that is all that plaintiff needed to do. Plaintiff's motion for default judgment must therefore be granted, and defendants are jointly and severally liable to plaintiff for $2,090,065.79.

Therefore, it is

ORDERED THAT

1. Plaintiff Ultra Dairy LLC's motions for default judgment against defendants George Kondrat and Andreas Pfeiffer are GRANTED in part and DENIED in part;

2. Plaintiff Ultra Dairy LLC is entitled to default judgment against defendants George Kondrat and Andreas Pfeiffer as to Counts: (I) fraud; (V) aiding and abetting fraud; and (VI) conversion;

3. Plaintiff Ultra Dairy LLC's Counts: (II) fraudulent inducement; (III) fraudulent misrepresentation; (IV) civil conspiracy to commit fraud; and (VII) unjust enrichment are DISMISSED WITH PREJUDICE against defendants George Kondrat and Andreas Pfeiffer;

4. Defendants George Kondrat and Andreas Pfeiffer are jointly and severally liable to plaintiff Ultra Dairy LLC for $2,090,065.79;

5. Plaintiff Ultra Dairy LLC is ordered to show cause why this case should not be closed no later than Thursday, February 11, 2021; and

6. If plaintiff Ultra Dairy does not show cause why this case should not be closed by that date, the Clerk of Court is directed to close the case file.

The Clerk of Court is directed to enter judgment accordingly.

Dated: January 21, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge